# In the United States Court of Federal Claims

No. 16-975C

(Filed Under Seal: October 27, 2016)

(Reissued for Publication: November 4, 2016)[1]

| | |
|---|---|
| ************************************* <br> GREAT SOUTHERN ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> K.S. WARE & ASSOCIATES, LLC, <br><br> Defendant-Intervenor. <br> ************************************* | Pre-award Bid Protest; Past Performance Evaluation; Deference to Agency's Evaluation of Proposals; Meaning of "Task Order," "Contract," and "Project"; Effect of Supreme Court's <u>Kingdomware</u> Decision. |

*Andrew D. Dill,* with whom were *Jerome S. Gabig Jr.* and *Richard J.R. Raleigh Jr.,* Wilmer & Lee, P.A., Huntsville, Alabama, for Plaintiff.

*Joshua D. Schnell,* with whom were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington D.C., and *Rosalid Greene Cylar*, Attorney, NASA Chief Counsel's Office, for Defendant.

---

[1] The Court issued this decision under seal on October 27, 2016 and invited the parties to submit proposed redactions of any competitive-sensitive, proprietary, confidential, or other protected information on or before November 3, 2016.  By that date, none of the parties proposed redactions.  Thus, the Court reissues the opinion in its entirety for publication.

*W. Brad English*, with whom were *J. Andrew Watson III, Jon D. Levin, Matthew Moore* and *Emily J. Chancey*, Maynard, Cooper & Gale, P.C., Huntsville, Alabama, for Defendant-Intervenor.

## OPINION AND ORDER

WHEELER, Judge.

In this pre-award bid protest, Plaintiff Great Southern Engineering, Inc. ("GSE") challenges the National Aeronautics and Space Administration's ("NASA's") treatment of multiple tasks orders issued under a single contract as one contract for the purposes of evaluating GSE's past performance. GSE submitted ten separate task orders under a single contract in response to a request for ten "example projects" in the solicitation. NASA determined that these task orders were not as relevant as ten separate contracts, resulting in a lower past performance score. According to GSE, NASA violated its duty to ensure that contractors receive impartial, fair and equitable treatment by deducting points from GSE's past performance score during the evaluation process. The issue before the Court is whether NASA reasonably interpreted the past performance evaluation criterion in deciding that GSE's performance of task orders under one contract is of limited relevance for the purpose of evaluating GSE's overall past performance. The Court finds that NASA interpreted the past performance criterion and evaluated GSE's past performance reasonably. The protest is denied.

## Background

On August 19, 2015, NASA issued Solicitation No. NNM16561119R ("the Solicitation") seeking firm-fixed price proposals for architect and environmental engineering services for Marshall Space Flight Center, Huntsville, Alabama, and other NASA facilities under Federal Acquisition Regulation ("FAR") Part 36. Administrative Record ('AR") 1-5; 48 C.F.R. § 36.602. NASA informed interested firms that it would evaluate the proposals using a 100-pont scale against the following six criteria:

> 1. Specialized experience and technical competence in environmental engineering services (40 points);
>
> 2. Professional qualifications and expertise of key personnel listed to perform the required services (20 points);
>
> 3. Past performance on similar *projects* in terms of cost control, quality of work, and compliance with performance schedules (20 points);
>
> 4. Capacity to accomplish the work in the required time (10 points);

2

> 5. Previous NASA contracts within the last ten years (i.e., maximum points if firm has not had any NASA contracts within the last 10 years) (5 points);
>
> 6. Offeror location in the general geographic area of Marshall Space Flight Center (5 points).

AR 2 (emphasis added). Further describing the past performance criterion, the Solicitation requested information "for up to 10 of the Offerors' most relevant *contracts* which are currently being performed or have been completed within 10 years." Id. at 3 (emphasis added). In accordance with the FAR, NASA would rank each proposal using the above scale and conduct negotiations with the highest ranking firm. Id. at 3; 48 C.F.R. § 36.602-4(b). If those negotiations were successful, then the highest ranking firm would be awarded a firm fixed-price Indefinite Delivery/Indefinite Quantity ("IDIQ") contract for a five-year ordering period. If those negotiations failed, the contracting officer would initiate negotiations with the second-most highly ranked firm. 48 C.F.R. § 36.606(f).

GSE, the ten-year incumbent, and K.S. Ware & Associates, LLC ("K.S. Ware") were the only two firms that submitted proposals in response to the Solicitation. AR 382. K.S. Ware was the highest ranking firm with a score of 89 points. Id. at 385. GSE received 71 points. Id. GSE received only five points for its past performance score because it submitted ten task orders all performed under its single incumbent IDIQ contract with NASA, six of which listed the same Contracting Officer's Representative ("COR") as its reference. Id. at 35-44, 47-48, 384. NASA determined that performance of task orders under one contract was of limited relevance when compared to performance of separate contracts. Importantly, GSE received zero points for previous contracts with NASA, the fifth criterion, because it was the incumbent. Id. at 384. If GSE had been granted the maximum points for past performance, it would have received a total of 86 points. On April 4, 2016, NASA selected K.S. Ware for negotiations specifically noting its diverse past performance and lack of prior contracts with NASA as key reasons for its decision. Id. at 376-78.

On April 22, 2016, GSE filed a bid protest in this Court alleging, in part, that NASA improperly evaluated its past performance by not considering the ten task orders to be ten separate "projects" under the Solicitation. Id. at 423. On May 24, 2016, the Court dismissed the protest without prejudice because NASA agreed to vacate its selection decision and re-evaluate the firms' submissions. Id. at 443. In the interest of fairness, NASA invited GSE and K.S. Ware to update their past performance submissions. Id. at 466. Specifically, NASA informed the firms that "the requirements have not changed as it relates to Past Performance. . . . [A] contract will be considered a single contract regardless of the number of task orders issued under the contract." Id. Instead of updating its past performance submission, on July 1, 2016, GSE filed an agency-level protest arguing that task orders are contracts as a matter of law. Id. at 642. NASA denied

3

GSE's protest stating that "[t]ask orders are not contracts." Id. at 656. It further explained that the rationale behind the past performance criterion was to seek feedback from "as many customers as possible." Id. at 658. The task orders were deemed to have only limited relevance because "[h]earing from one COR on ten different task orders does not provide the same insight into a contractor's past performance as hearing from ten CORs on ten different contracts." Id.

On August 10, 2016, GSE again filed a protest in this Court challenging NASA's treatment of its ten task orders as arbitrary conduct violating NASA's duty to ensure that contractors receive "impartial, fair and equitable treatment." GSE asked this Court for a declaratory judgment and permanent injunction. Pl.'s Mot. at 7 (citing 48 C.F.R. § 1.602-2(b)). On August 15, 2016, the Court granted K.S. Ware's motion to intervene. On September 7, 2016, GSE filed a motion for judgment on the administrative record. On September 21, 2016, the Government and K.S. Ware each filed an opposition to GSE's motion and a cross-motion for judgment on the administrative record. The parties have fully briefed their motions, and on October 7, 2016, the Court heard oral argument.

Discussion

A. Standard of Review

Under the Tucker Act, when presented with a bid protest this Court reviews an agency's decision pursuant to the standards of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4); see also Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (stating that the APA standard of review shall apply in all procurement protests in the Court of Federal Claims). Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Banknote Corp. of America, Inc. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004).

An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion." Impresa, 238 F.3d at 1332–33. Further, an agency must articulate a "rational connection between the facts found and the choice made." Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Auto. Insurance, Co., 463 U.S. 29, 43 (1983). The Court affords an agency "the greatest deference possible" in evaluating past performance in a negotiated procurement. Commissioning Solutions Global, LLC v. United States, 97 Fed. Cl. 1, 9 (2011); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 784 (2011); Banknote Corp. of America v. United States, 56 Fed. Cl. 377, 386 (2003) (citing Forestry Surveys & Data v. United States, 44 Fed. Cl. 493, 499 (1999)). A decision regarding what constitutes relevant past performance falls within this considerable deference. Glenn Defense Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 911 (Fed. Cir. 2013); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 539 (2010) ("At the outset, it is

4

important to note that what does or does not constitute 'relevant' past performance falls within the [agency's] considered discretion.").

If the Court determines that an agency acted without a rational basis, it must then determine whether "the bid protestor was prejudiced by that conduct." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The plaintiff must show prejudice by demonstrating "that there was a substantial chance it would have received the contract award but for [the agency's procurement] error." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

B. Analysis

GSE argues that NASA's interpretation of the word "project" in the past performance criterion as being synonymous with "contract," but excluding "task order," is arbitrary and capricious because the "mechanical" interpretation violates NASA's duty to treat contractors fairly by discounting GSE's relevant past experience with NASA. Pl.'s Mot. at 9. In essence, GSE contends that its sole experience with NASA, amounting to over 87 task orders, should have earned a perfect past performance score. According to the Government, NASA's determination that task orders issued under one IDIQ contract are of limited relevance to past performance was reasonable and warranted a five point score for GSE's past performance. Gov't Resp. at 8. The Government argues that task orders are not identical to contracts under the Solicitation's past performance criterion. As explained below, NASA reasonably determined that the task orders were of limited relevance for purposes of evaluating GSE's past performance.

1. *Kingdomware Technologies, Inc. v Unites States* does not Establish that Task Orders are Contracts as a Matter of Law.

As a preliminary issue, the Court must address whether a recent Supreme Court decision found that task orders are contracts as a matter of law. Kingdomware Technologies, Inc. v. United States, 136 S.Ct. 1969 (2016). GSE argues that it does and, thus, easily resolves this case. Pl.'s Mot. at 16 ("[T]he United States Supreme Court has ruled that task orders are contracts [and] it is incorrect as a matter of law and indefensible for NASA to contend that the task orders GSE performed . . . on an IDIQ contract are not contracts."). However, GSE misreads the holding in Kingdomware.

In Kingdomware, the Supreme Court held that orders issued by the Department of Veteran Affairs under the GSA Federal Supply Schedule ("FSS") constitute contracts for purposes of compliance with the Veterans Benefits, Health Care, and Information Technology Act of 2006. 136 S.Ct. at 1978-79; 38 U.S.C. § 8127. The FSS allows an agency to acquire supplies or services in bulk indefinitely over a period of time, without undergoing a cumbersome bidding process for each individual order. Kingdomware, 136 S.Ct. at 1974. Agencies receive a list of available items on the FSS and when an agency wishes to acquire a good or service, the agency simply produces

an FSS order and sends it to the contractor.  Id.  Since an FSS order creates obligations to pay for and deliver goods between the agency and the contractor, an FSS task order is a contract under the Act.  Kingdomware, 136 S.Ct. at 1978.  The Supreme Court further held that the agency's interpretation did not warrant deference because a statute, not an agency decision, was the subject of interpretation.  Id. at 1979.

The protest currently before the Court does not involve an FSS order and NASA is not subject to the Act at issue in Kingdomware.  The interpretative issue in this case involves a solicitation, not a statutory provision.  GSE does not assert that each of its task orders produced new contractual obligations between the firm and NASA.  In short, Kingdomware is not dispositive.  Kingdomware does not stand for the general proposition that all task orders are considered contracts as a matter of law.

### 2. NASA's Determination that GSE's Task Orders were of Limited Relevance was Reasonable.

GSE argues that since it was the incumbent to NASA's procurement and completed over 87 task orders, it is "readily apparent" that GSE has more relevant past performance than K.S. Ware.  Pl.'s Mot. at 9.  Thus, NASA's determination that the task orders were of only limited relevance was not reasonable.  GSE hopes to persuade the Court that its superior past performance is so obvious that receiving a lower past performance score than K.S. Ware can only be explained by unfair treatment.  Id. at 12-14.

In support of this position, GSE cites one Court of Federal Claims' decision.[2]  Serco Inc. v. United States, 81 Fed. Cl. 463 (2008).  In Serco, a contractor challenged the method by which an agency evaluated past performance as arbitrary.  The agency conducted a phone survey of past CORs in which it asked very broad questions and only allowed simple two word responses such as "very well" or "very good."  Id. at 483.  The Court held that this method "did not provide the sort of detail that would allow agency personnel to evaluate past performance rationally" because it left "the evaluators to extrapolate a rating out of these two-word descriptors."  Id.  Serco is not on point.  GSE and K.S. Ware were each allowed to submit interview/questionnaire forms produced by the CORs that allowed for open-ended responses.  AR 3, 34-54, 190-256.  In addition, GSE was invited to include more information about its past performance which it declined.  Id. at 466.  Serco is not analogous because it involves very different past performance evaluation procedures.

Still, GSE insists that NASA acted unfairly by failing to consider each task order as a distinct contract.  Pl.'s Mot. at 13.  At various times, GSE refers to NASA's evaluation as "nonsensical", "flawed" and "irrational."  Id. at 10-11, 12, 13.  These descriptive adjectives do

---

[2] GSE also cites five GAO decisions to support its position which are not controlling of this Court.  Pl.'s Mot. at 11-12.  In addition, like Serco, these GAO decisions are based upon cases too dissimilar to be helpful in this matter.

not alter the rationality of NASA's actions. Under the significant deference agency procurement decisions are entitled, the Government has more than demonstrated that NASA's evaluation was reasonable. First, NASA articulated a reasonable explanation for interpreting the word "project" to exclude task orders performed under one contract. AR 454, 658. Evaluations of diverse past experience would result in a better past performance evaluation. Gov't Resp. at 11. This explanation reasonably justifies the agency's decision to award more points to K.S. Ware for providing information regarding multiple contracts. Importantly, NASA described its interpretation to GSE during the procurement process when it offered the firms an opportunity to supplement their submissions. AR at 454 (stating that a single contract will be considered one contract "regardless of the number of task orders issued under a contract."). Of the ten COR reports that GSE submitted, five of them produced by the same COR were completely identical in content and provided no narrative summary. Id. at 208-35. A sixth COR report had only one minor difference. Id. at 204 (giving GSE a score of "excellent plus" for GSE's interaction with Government staff instead of "excellent"). In contrast, each of K.S. Ware's COR reports differed in content and provided a narrative summary. Id. at 259-90.

Second, NASA's interpretation was consistent with the standards contained in FAR Part 36 stating that performance with "Government agencies *and private industry*" should be considered during past performance evaluations. 48 C.F.C. § 36.602-1(a)(4) (emphasis added). Moreover, NASA's interpretation was consistent with the purpose of the fifth evaluation criterion – "previous NASA contracts" – which grants more points to firms that have not been awarded NASA contracts in the past. AR 2. Under GSE's reasoning, the purpose of the past performance criterion would be in conflict with the purpose of the fifth criterion because it would reward GSE's non-diverse experience. NASA's own rationale, seeking diverse past performance, aligns more readily with the goal of seeking contractors that have not been awarded a recent NASA contract.

NASA has the authority to decide what past performance is relevant to a particular procurement. PlanetSpace, 92 Fed. Cl. at 539 ("[W]hat does or does not constitute 'relevant' past performance falls within the [agency's] considered discretion."). It did not arbitrarily decide that GSE's experience with NASA was completely irrelevant, instead it determined the task orders had limited relevance because they occurred under one contract. An agency's past performance evaluations during a negotiated procurement warrants the greatest possible deference, and the Court sees ample reason to defer to NASA's past performance evaluation. Glenn Defense Marine (ASIA), 720 F.3d at 911.

### 3. Even with a Perfect Past Performance Score, GSE would not have been the Highest Ranking Firm.

Finally, the Court notes that even had NASA awarded GSE maximum points for its past performance, K.S. Ware would still have been the highest scoring firm. AR 385. Since K.S. Ware had never held a contract with NASA it received five additional points under the fifth criterion.

Id. at 384.  GSE does not challenge NASA's award of points under the fifth criterion.  In order to prevail in this bid protest, GSE must show that there was a substantial chance it would have received the contract award if not for its past performance score.  Alfa Laval Separation, 175 F.3d at 1367.  Under FAR Part 36, K.S. Ware would still have been the highest scoring offeror and, thus, the first to enter negotiations with NASA.  GSE has failed to show that it suffered any harm caused by NASA's interpretation of "project" since it would still have been the second highest scoring firm even with maximum points for past performance.

## Conclusion

Given the significant deference to agency decisions during the evaluation process, the Court is limited to setting aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see Banknote Corp. of America, 365 F.3d at 1350-51.  NASA articulated a reasonable explanation for its decision.  Therefore, the Court will not disturb NASA's determination that task orders issued under an IDIQ contract are of limited relevance for purposes of evaluating GSE's past performance.  The Court DENIES GSE's motion for judgment on the administrative record and GRANTS the Government's and K.S. Ware's cross-motions for judgment on the administrative record.  The Clerk shall enter judgment in favor of the Government and K.S. Ware.  No costs.

IT IS SO ORDERED.

                                                      s/ Thomas C. Wheeler
                                                      THOMAS C. WHEELER
                                                      Judge